IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DONA C. FENTON**,<br><br>    Plaintiff,<br><br>    v.<br><br>**CAROLYN W. COLVIN**,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 6:14-cv-0350-SI<br><br>**OPINION AND ORDER** |

Alan Stuart Graf, 208 Pine Street, Floyd, VA 24091. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEYS OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Dona Fenton ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the Commissioner's decision is reversed and remanded for immediate payment of benefits.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff was born in March, 1968. AR 131. She protectively filed an application for DIB benefits on May 6, 2010. AR 14, 131. Plaintiff initially alleged a disability onset date of June 10, 2009, but later amended that date to April 1, 2010. AR 14. Plaintiff was 42 years old at the alleged disability onset date. AR 131.

PAGE 2 – OPINION AND ORDER

Plaintiff's claim was denied initially on September 16, 2010, and upon reconsideration on January 27, 2011. AR 14. She requested a hearing before an ALJ, and a hearing was held on September 17, 2012. AR 29-62. On October 4, 2012, the ALJ issued a written decision finding Plaintiff not disabled. AR 11-24. The Appeals Council denied Plaintiff's subsequent request for review on January 2, 2014, making the ALJ's decision final. AR 1. This appeal followed.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

PAGE 3 – OPINION AND ORDER

> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

After finding that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, the ALJ performed the sequential analysis. AR 16. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after April 1, 2010, the alleged disability onset date. *Id*. At step two, the ALJ found that Plaintiff has the following severe impairments: occipital headaches/occipital neuralgia, migraines, alcohol abuse, and psoriasis. *Id.* At step three, the ALJ found that none of Plaintiff's severe impairments met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17-18.

The ALJ next assessed Plaintiff's RFC, and concluded:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a); specifically, she can lift/carry ten pounds frequently and less than ten pounds occasionally. She can sit for six or more hours in an eight-hour workday and she can stand/walk for six hours in an eight-hour workday. She can occasionally push/pull up to ten pounds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffold. She can occasionally do bilateral overhead reaching. She must avoid workplace hazards, such as unprotected heights or dangerous machinery (machinery that can slice, dice, or crush). She can understand, remember and carry out only simple tasks that can be learned in 30 days or less. She can work in low stress jobs that provide only occasional changes in work setting and occasional decision-making.

AR 18. Proceeding to step four, the ALJ concluded that Plaintiff could not perform any of her past relevant work. AR 23. At step five the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, including warehouse records clerk, label coder and marker, and clerical collator. AR 23-24. Accordingly, the ALJ concluded that Plaintiff is not disabled. *Id.*

PAGE 5 – OPINION AND ORDER

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) discounting her credibility; (2) rejecting the opinion of treating neurologist Mia Schreiner; and (3) failing to reconcile an inconsistency between the DOT and the VE testimony. For the reasons discussed below, the ALJ's decision is reversed.

### A.  Plaintiff's Credibility

Plaintiff argues that the ALJ improperly found her not credible. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the U.S. Court of Appeals for the Ninth Circuit has said that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the administrative hearing, Plaintiff testified that she is unable to work due to recurring debilitating migraine headaches that occur at least four days per week.  AR 38-39. She

PAGE 7 – OPINION AND ORDER

stated that her headaches cause dizziness and tearfulness, rendering her unable to perform her job at Big Lots. AR 36. Plaintiff testified that she left her job at Big Lots because she was offered a job with her cousin that would not require her to lift objects and would require fewer hours. AR 37. Plaintiff disagreed with the ALJ's presentation of the medical evidence, stating that she had two or three headaches per week in 2011. AR 38. She stated that her headaches got worse in 2012, but that she has not seen a doctor since January of 2012. AR 39. Plaintiff manages her pain with Tegretol and Tylenol. AR 40.

The ALJ rejected Plaintiff's testimony. AR 18-22. First, the ALJ found that Plaintiff's statements regarding her headaches were inconsistent with the medical evidence. AR 19. The ALJ may consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [the claimant] complains" when assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). Here, the ALJ noted that Plaintiff's testimony that she "felt dizzy up to 20 times per day" was contradicted by her reports to her treating neurologist Mia Schreiner, M.D. The ALJ, however, does not point to any specific evidence within the medical record to contradict Plaintiff's testimony on this point. AR 19.

The ALJ also found that contrary to Plaintiff's testimony, Plaintiff reported to Dr. Schreiner that she did not have any headaches in 2011 after increasing her dosage of Tegretol. AR 19, 39. At the hearing, Plaintiff contested this assertion. AR 39. Dr. Schreiner differentiated between Plaintiff's daily headaches and episodic headaches in her treatment notes. Understood in context, Dr. Schreiner's progress notes from 2011 indicate that Plaintiff suffered from frequent headaches and experienced relief only after Dr. Schreiner increased Plaintiff's medication dosage. AR 284, 286. In any case, Dr. Schreiner commented that Plaintiff's headaches had returned by July, 2011, and Dr. Schreiner's notes regarding "the nature, severity,

and effect of [Plaintiff's] symptoms" are consistent with Plaintiff's testimony. AR 286; *Thomas*, 278 F.3d at 958–59. Dr. Schreiner's medical records do not provide a legally sufficient reason for rejecting Plaintiff's credibility.

Second, the ALJ found that Plaintiff's positive response to treatment reflected negatively on her testimony that she was unable to work due to her impairments. *Id*. Impairments that can be controlled with medication are not disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ noted that Plaintiff's symptoms were managed with Tegretol for over a year, and that Tegretol did not cause any side effects. AR 19-20, 284, 285. On January 3, 2012, for example, Plaintiff reported doing fine with no headaches after an increase in her dosage of Tegretol. AR 281. On this record, it was proper for the ALJ to infer that Plaintiff's condition improved with medication.

Plaintiff's response to medication, however, is not a clear and convincing reason to reject her hearing testimony. Plaintiff testified that her headaches increased in frequency over time, and that her symptoms had worsened. AR 38-39. The fact that medication helped alleviate Plaintiff's symptoms in the past does not imply that Tegretol is presently effective at treating Plaintiff's headaches. Because Plaintiff's date last insured is September 30, 2015,[1] her present symptoms are relevant. On this record, it was not reasonable for the ALJ to use Plaintiff's past response to medication to discredit her testimony regarding her present symptoms. *See Kahler v. Colvin*, 2014 WL 65741, at *7-8 (W.D. Wash. Jan. 8, 2014) (finding ALJ's determination that claimant's headaches were adequately treated with medication not supported by substantial evidence in the record because the record showed periods of time during which the claimant experienced significant improvement on her medication and periods of time where medication

---

[1] Plaintiff has acquired sufficient quarters of coverage to remain insured through September 30, 2015. AR 14, 16.

PAGE 9 – OPINION AND ORDER

was not always completely effective in ameliorating headache symptoms). Plaintiff's positive response to treatment in the past does not provide a clear and convincing reason for rejecting her testimony. *See Warre*, 439 F.3d at 1006.

Third, the ALJ discussed gaps in Plaintiff's treatment records. AR 19, 39. Failure to seek treatment can reflect negatively on a claimant's credibility. *Smolen*, 80 F.3d at 1284. Here, Plaintiff went nine months without treatment in 2012 despite allegations of frequent debilitating headaches. AR 39. There is also a gap in treatment from April, 2010 to April, 2011. AR 286. Plaintiff testified that during the periods when she did not see a doctor, she continued to manage her headaches as directed, with the medication prescribed by her treating neurologist. On this record, the Court finds that the gaps identified in Plaintiff's treatment records do not provide a clear and convincing reason for rejecting her testimony.

Fourth, the ALJ concluded that Plaintiff's daily activities undermined her credibility as to the severity of her limitations. AR 20-21. Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that despite Plaintiff's testimony regarding her limitations, Plaintiff was able to work from October, 2009, until April of 2010. AR 20. The ALJ also noted that Plaintiff was able to drive a car, perform household chores, attend church, and visit with neighbors. AR 21. The Court finds that these activities do not contradict Plaintiff's testimony. Plaintiff testified that her headaches and their attendant debilitating symptoms are episodic; and headaches are the primary reason Plaintiff testified that she cannot work. It follows that during the periods when Plaintiff is not suffering a migraine headache, she would not be significantly limited in her daily functioning. It is thus consistent with Plaintiff's testimony that,

PAGE 10 – OPINION AND ORDER

when not suffering a migraine, she is able to perform the daily activities noted by the ALJ. Similarly, Plaintiff's work activity performed before the alleged onset date—and after she had been "released back to work" by her treating neurologist—does not reflect negatively on her credibility. *See* AR 37.

In sum, the ALJ's credibility determination is not supported by clear and convincing reasons.

## B. Treating Neurologist Dr. Mia Schreiner

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830.

PAGE 11 – OPINION AND ORDER

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

Dr. Schreiner first examined Plaintiff in June, 2009. AR 269-70. At that time, Plaintiff was having new onset headaches every day but was otherwise healthy. AR 270. Dr. Schreiner prescribed Tegretol and Percocet. AR 242, 256-57, 269-70, 287. By September, 2009, the frequency of Plaintiff's headaches had decreased from their previous daily occurrence, and were then only episodic. AR 253. In June, 2010 Dr. Schreiner wrote,

> I'd like her to continue not working, as she has a very strenuous job and I feel that she is unable to do this at this time because exertion makes her headache worse.

AR 260. In February, 2012, Dr. Schreiner again noted that Plaintiff's once daily headaches were now only "episodic, about 4 in 10-12 days." AR 287. Dr. Schreiner concluded that even low-stress jobs would cause Plaintiff to have headaches, and that she would miss more than two days of work per month due to her symptoms and limitations. AR 358-59.

The ALJ rejected Dr. Schreiner's opinion. AR 20. Instead, the ALJ gave some weight to the opinions of the state agency physicians, who both assessed limitations that would not preclude substantial gainful activity, thus contradicting Dr. Schreiner's opinion. AR 20, 63-72, 75-84. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Schreiner's controverted opinion. *Lester*, 81 F.3d at 830.

First, the ALJ noted that Dr. Schreiner's opinion was inconsistent with her own progress notes. AR 20. As an initial matter, some of the alleged inconsistencies are between Plaintiff's testimony and Dr. Schreiner's opinion. These alleged inconsistencies are discussed above. Further, the Court can find no inconsistencies within Dr. Schreiner's own treatment records. Dr. Schreiner's records describe symptoms and limitations that wax and wane over time, noting headaches that have occurred daily and episodically. AR 284, 286. Because the Commissioner has not shown inconsistency within Dr. Schreiner's progress notes, the ALJ's conclusion that Dr. Schreiner's opinion was inconsistent with her own examination and treatment records was not a specific, legitimate reason for rejecting it. *Lester*, 81 F.3d at 830.

Second, the ALJ noted that Dr. Schreiner's opinion was inconsistent with Plaintiff's statements and work activity. The ALJ may reject a physician's opinion if it conflicts with a claimant's activities. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999). For example, the ALJ noted that although Dr. Schreiner wrote in June, 2009 that Plaintiff should not work, Plaintiff was able to work from October, 2009 until April, 2010, the amended alleged onset date. AR 21-22, 37. Because Plaintiff was "released back to work in October of '09," however, her work activity before the alleged onset date does not conflict with longitudinal record of Dr. Schreiner's opinion. AR 37.

The ALJ also rejected Dr. Schreiner's opinion because she found that when Plaintiff left her job in April, 2010, it was not due to her disability; rather, it was with the intention of taking another, less strenuous, job with fewer hours. AR 20. The record reveals that Dr. Schreiner recommended that Plaintiff cease working because the strain of her heavy exertion job precipitated her headaches. AR 260. Further, Plaintiff never began working at a new job after April, 2010. AR 37. Because Plaintiff ceased to perform her heavy exertion job based on

Dr. Schreiner's recommendation, the Court finds no contradiction with Dr. Schreiner's opinion. Plaintiff may have believed for a time that she was capable of working after April, 2010, but there are no facts in evidence that show she was actually capable of sustaining gainful employment.

Third, the ALJ found that Dr. Schreiner's opinion relied heavily upon Plaintiff's statements, which the ALJ held to be not credible. The ALJ may reject portions of a physician's opinion predicated on reports of a claimant properly found not credible. *Ryan v. Astrue*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) As discussed above, however, the ALJ erroneously rejected Plaintiff's testimony. Therefore, Dr. Schreiner's reliance upon Plaintiff's subjective complaints is not a legally sufficient reason for rejecting Dr. Schreiner's opinion.

In sum, the ALJ failed to provide sufficient specific, legitimate reasons for rejecting Dr. Schreiner's opinion.

**C. VE Testimony and DOT**

Plaintiff next argues that the ALJ erred by relying upon VE testimony that conflicted with the DOT. Here, the ALJ limited Plaintiff to sedentary work; the VE identified that she could perform the occupations of label coder and clerical collator, both light exertion jobs. The VE, however, also identified the sedentary job of warehouse records clerk. Because the ALJ found at step five that Plaintiff could perform the sedentary job of warehouse records clerk consistent with her RFC, any error in the ALJ's reliance upon the VE's other testimony was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error may be harmless if it has no effect on the ultimate non-disability determination). Because the ALJ improperly discredited Plaintiff's testimony and the opinion of her treating neurologist, however, the ALJ assessed an incomplete RFC and presented a deficient hypothetical to the VE. This issue regarding

disagreement between the VE and the DOT is therefore moot, because VE's testimony was based on an improper hypothetical.

### D. Remand

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014).

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v.*

PAGE 15 – OPINION AND ORDER

*Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1142 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

Here, no further development of the record is necessary to support a finding of disability. Dr. Schreiner opined that even low-stress jobs would cause Plaintiff to have headaches, and estimated that she would miss more than two days of work per month due to her symptoms. AR 358-59. The VE testified that an individual with this limitation would not be able to "hold a job or sustain . . . employment" at the level of skill identified. AR 58-59. When the improperly rejected medical evidence is credited as true, no useful purpose would be served by further administrative proceedings. The case is therefore reversed and remanded for immediate payment of benefits. *Garrison*, 759 F.3d at 1020.

## CONCLUSION

For the reasons articulated above, the ALJ's decision is reversed and remanded for immediate payment of benefits.

**IT IS SO ORDERED**.

DATED this 9th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 16 – OPINION AND ORDER