IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DONA C. FENTON**, | Case No. 6:14-cv-0350-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Alan Stuart Graf, 208 Pine Street, Floyd, VA 24091. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEYS OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

On March 9, 2015, the Court reversed the decision of the Commissioner of Social Security ("Commissioner") and remanded this case for an award of benefits. Dkts. 18 and 19. On April 6, 2015, the Commissioner filed a motion under Federal Rule of Civil Procedure 59(e), requesting that the Court amend or correct its Opinion and Order and Judgment remanding the case for an award of benefits. Dkt. 20.

PAGE 1 – OPINION AND ORDER

Under Federal Rule of Civil Procedure 59(e), a court has discretion to alter or amend a judgment if: (1) it is presented with newly discovered evidence; (2) it committed clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 424 (2012); *see also McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) ("A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") (citation and quotation marks omitted). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000) (quotation marks and citation omitted).

The Commissioner argues that an amended or corrected opinion and judgment are appropriate in this case because the Court erroneously relied on the date that certain medical records were printed as the date the medical records were created. The correct dates of the medical records demonstrate that Plaintiff had very long periods of time with no symptoms and during which time she did not seek treatment and thus, the Commissioner argues, demonstrate that the ALJ did not err in her credibility determinations. Plaintiff argues that the Court's mistaken review of the evidence should not affect the Court's rejection of the ALJ's credibility determinations.

The Court agrees with the Commissioner that the Court's misunderstanding of the dates of the medical evidence rendered the Opinion and Order erroneous and unjust. The Court therefore amends the Discussion section of its March 9, 2015 Opinion and Order as set forth below.

# DISCUSSION

## A. Headache Treatment Summary

Considering the correct dates of the medical evidence, Plaintiff's headache and treatment history with Dr. Mia Schreiner are as follows:

- June 2009: Dr. Schreiner begins treating Plaintiff for daily headaches. AR 269-73.

- July 21, 2009: Plaintiff reports that her headaches are now episodic instead of daily and Dr. Schreiner notes that Plaintiff's headaches are now approximately four headaches in every 10-12 days.[1] AR 261-63.

- August 2009: Plaintiff has two visits with Dr. Schreiner, reporting continuing episodic headaches. Dr. Schreiner notes that she would like Plaintiff to continue not working because Plaintiff has a "very strenuous job" and exertion makes Plaintiff's headaches worse. AR 255-60.

- September 22, 2009: Plaintiff reports only four headaches in the last three weeks, but reports dizziness from her medication. Dr. Schreiner notes that she would like Plaintiff to continue not working because of the dizziness, which Dr. Schreiner expects will resolve in a few weeks. AR 252-54.

---

[1] Dr. Schreiner's treatment notes contain an "impression" section at the end. For Plaintiff's July 21, 2009 visit, Dr. Schreiner notes in that section that Plaintiff's headaches had been daily and were "now" episodic, with approximately four in every 10-12 days. This notation continues nearly verbatim in the "impression" section of Dr. Schreiner's treatment notes for each of Plaintiff's appointments thereafter (except for Plaintiff's post-hearing visit on September 24, 2012), even though in the treatment notes regarding each specific visit, Dr. Schreiner details Plaintiff's contemporaneous reports regarding the duration and severity of her headaches as of that specific visit. For visits after July 21, 2009, the Court considers the specific contemporaneous notes by Dr. Schreiner regarding the severity and duration of Plaintiff's headaches. The Court does not consider the boiler-plate summary that Plaintiff's headaches are approximately four in every 10-12 days that is contained in the "impression" section and that remains unchanged after July 21, 2009.

- October 15, 2009: Plaintiff reports no headaches since her last visit, her dizziness from the medication has resolved, and she thinks she can return to work. Dr. Schreiner gives Plaintiff a release back to work. AR 250-51.

- December 4, 2009: Plaintiff reports only two mild headaches since her last visit, both of which were precipitated by lifting something heavy at work and that she continues to do well on her medication. Plaintiff reports her headaches are doing well and her job has been mostly stress-free. Dr. Schreiner does not mention any work restrictions. AR 248-49.

- December 15, 2009: Plaintiff reports a headache lasting four days triggered by the stress of having to work the cash register at work. Dr. Schreiner administers a right greater occipital nerve block. Dr. Schreiner writes a note to Plaintiff's job regarding the stress of having Plaintiff work the cash register triggering headaches. AR 245-47.

- March 5, 2010: Plaintiff reports daily headaches occurring for the previous three weeks, after weeks of relief from the nerve block administered on December 15, 2009. Dr. Schreiner administers another right greater occipital nerve block. Dr. Schreiner does not mention any work restrictions. AR 242-44.

- April 1, 2010: Plaintiff's amended disability onset date.

- April 2010: Plaintiff leaves her job at Big Lots, expecting to take a job with her cousin that would not require lifting and would be less hours. AR 36-37.

- April 1, 2011: Plaintiff reports that she had been doing well until the last few months, when her pain returned and could last for several days at a time. Dr. Schreiner opines that Plaintiff's worsening headaches may have been caused

PAGE 4 – OPINION AND ORDER

by Plaintiff's November 2010 motor vehicle accident and the resulting physical therapy neck exercises. Dr. Schreiner administers a right greater occipital nerve block. Dr. Schreiner advises Plaintiff to avoid pressure on the back of Plaintiff's head but does not mention any work or other restrictions. AR 286-88.

- July 1, 2011: Plaintiff reports that she has been doing "very well" since her last visit and that she has not had any headaches. Dr. Schreiner advises Plaintiff to continue to avoid pressure on the back of Plaintiff's head but does not mention any work or other restrictions.AR 284-85.

- January 3, 2012: Plaintiff reports that she lowered the dosage of her medication and that triggered headaches beginning in November 2011 so she raised her dosage and since then has been doing well without any headaches and without any side effects. Dr. Schreiner again advises Plaintiff to avoid pressure on the back of Plaintiff's head but does not mention any work or other restrictions. AR 281-83.

- March 23, 2012: Dr. Schreiner completes a medical opinion form supplied by Plaintiff's counsel, implying that Plaintiff left work in April 2010 due to her headaches, opining that Plaintiff's condition lasts or could be expected to last greater than 12 months, opining that Plaintiff would miss two or more days per month of work, and marking "yes" that Plaintiff has been unable to work since June 10, 2009. AR 348-50.

- September 17, 2012: Plaintiff testifies at the hearing that she has headaches four to six days a week and gets dizzy 20 times per day. She also testifies that she can

      walk one to two miles, has no problems sitting, and can lift approximately six pounds. AR 43-45.

- September 24, 2012: After the hearing, Plaintiff reports to Dr. Schreiner that Plaintiff's headaches and dizziness "returned" in August 2012, are daily, and are at a level 8 on the pain scale. Dr. Schreiner notes that there is no clear cause for Plaintiff's returning headaches and that Plaintiff's examination was normal. AR 352-54.

- September 25, 2012: Dr. Schreiner completes a report provided to her by Plaintiff's counsel. Dr. Schreiner notes that on September 24, 2012, Plaintiff reported a "return" of daily and incapacitating headaches in August 2012, without having made any changes to her medication. Dr. Schreiner further notes that headaches are unpredictable and tend to be worse at some times and better at other times. Dr. Schreiner checks "yes" to questions asking if Plaintiff's headaches would wax and wane; if Plaintiff would miss two days a month of work, despite Plaintiff's periods of improvement; and if low stress jobs would make it more likely that Plaintiff would experience headaches. AR 356-59.

## B. Plaintiff's Credibility

Plaintiff argues that the ALJ improperly found her not credible. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

PAGE 7 – OPINION AND ORDER

Further, the U.S. Court of Appeals for the Ninth Circuit has said that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff alleges a disability onset date of April 1, 2010.[2] Plaintiff testified at the September 17, 2012 hearing that she is unable to work due to recurring debilitating headaches. Plaintiff testified that she had left her job at Big Lots in April 2010 because she intended to take a job with her cousin that would not require her to lift objects and would require fewer hours. This job never materialized and Plaintiff did not work after leaving Big Lots. Plaintiff also testified that her headaches got worse in 2012, but admitted that she had not seen a doctor for her headaches since January, 2012.

The ALJ found Plaintiff's testimony to be not fully credible. The ALJ found Plaintiff's statements regarding the limiting effects of her headaches to be inconsistent with and unsupported by the medical evidence, contradicted by Plaintiff's activities of daily living, contradicted by Plaintiff's improvements with medication, and incredible in light of Plaintiff's

---

[2] Plaintiff originally asserted a disability onset date of June 10, 2009, but at the hearing amended it to April 1, 2010, because Plaintiff had continued to work after the original alleged disability onset date.

failure to seek treatment. The Court previously rejected each of these as a clear and convincing reason to reject Plaintiff's testimony.

With the corrected treatment dates before the Court, the accurate timeline of Plaintiff's treatment records evidences that the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record. The ALJ's determination that Plaintiff's improvement with medication, Plaintiff's failure to seek treatment, and the inconsistency between Plaintiff's medical records and her testimony were clear and convincing reasons to discredit Plaintiff's testimony was a rational interpretation of the evidence.[3] Although the evidence may also support another interpretation, the Court must uphold the ALJ's interpretation if it is rational. *See Burch v. Barnhart*, 400 F .3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 1. Improvement with medication

As the Court previously found, the record supports that Plaintiff improved with medication and improvement with medication may be a clear and convincing reason to discount credibility. The Court's previous finding that the medical evidence supports Plaintiff's testimony that her current symptoms are not improved, however, is no longer supported by the evidence. The Court had determined that Plaintiff reported improvement from April 2011 through January 2012, but then reported in February 2012 episodic headaches of approximately four in every 10-12 days. There was, however, no such report of worsening symptoms in February 2012.

---

[3] The Court does not amend its finding regarding Plaintiff's daily living activities contradicting Plaintiff's testimony regarding her headaches. Headaches are episodic in nature and it follows that during the periods when Plaintiff is not suffering a migraine headache, she would not be significantly limited in her daily functioning. It is thus consistent with Plaintiff's testimony that, when not suffering a migraine, she is able to perform the daily activities noted by the ALJ.

PAGE 9 – OPINION AND ORDER

The record thus shows that from April 2011 through the date of the hearing, Plaintiff's reports to Dr. Schreiner were that Plaintiff's symptoms had improved with medication and that Plaintiff suffered no headaches after April 2011 except for a time period where Plaintiff had tested lowering her medication. The fact that Plaintiff reported to Dr. Schreiner a few days after the hearing that Plaintiff's headaches had "returned" in August 2012 does not detract from her repeated reports of improvement with medication that occurred before the ALJ questioned at the hearing the veracity of Plaintiff's testimony that her symptoms had not improved with medication. Thus, the ALJ did not err in determining that Plaintiff's improvement with medication was a clear and convincing reason to discredit her hearing testimony.

### 2. Failure to seek treatment

"Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a factor the ALJ may consider in weighing a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, Plaintiff testified in September 2012 that her headaches were debilitating, but she had not sought treatment since her July 2011 and January 2012 visits with Dr. Schreiner where she reported having no headaches. The fact that the Court had mistakenly determined that Plaintiff had sought treatment in February 2012 and complained of headaches renders the Court's finding that Plaintiff's treatment gaps did not support rejecting her credibility erroneous and unjust. With the accurate treatment timeline, the fact that Plaintiff did not seek treatment at all in 2012 for her allegedly debilitating headaches was a clear and convincing reason to discount Plaintiff's credibility.

Plaintiff's treatment records show that when her headaches returned or increased in severity, she sought treatment from Dr. Schreiner. For example, Plaintiff saw Dr. Schreiner on December 4, 2009, and her follow up was not supposed to be until three months later. Plaintiff, however, sought treatment less than two weeks later, on December 15, 2009, because she had a

PAGE 10 – OPINION AND ORDER

headache that lasted four days. This treatment resulted in Plaintiff being headache-free for many weeks. When her headaches returned, she sought treatment on March 5, 2010. This treatment resulted in Plaintiff being headache-free for nearly a year. When her headaches returned, she sought treatment from Dr. Schreiner on April 1, 2011. This treatment worked and as of July 2011, Plaintiff reported having no headaches. She again reported having no headaches in January 2012, except for in November 2011 when she experimented with lowering her medication.

Plaintiff offered no explanation at the hearing for why, if her headaches returned after January 2012, she did not seek treatment for those headaches as she had in the past. Her past treatments had been successful and there was no indication that treatment in 2012 would be futile or unsuccessful. Plaintiff also offers no argument to the Court for why she did not seek treatment in 2012 until a few days after the hearing, after the ALJ had questioned her failure to seek treatment for her allegedly debilitating headaches. Plaintiff does not argue that she does not have insurance or could not afford treatment. To the contrary, immediately after the hearing Plaintiff sought treatment from Dr. Schreiner.

Plaintiff reported to Dr. Schreiner on September 24, 2012, that Plaintiff's headaches "returned" in August 2012, one month before Plaintiff's hearing before the ALJ. Plaintiff reported that this "return" of headaches occurred without any triggering event such as stress or lifting heavy objects or a medication change, such as had triggered Plaintiff's previous reports of returning headaches. This report to Dr. Schreiner, however, was also inconsistent with Plaintiff's testimony at the hearing, which was that Plaintiff had not had periods of improvement in 2011 or 2012.

The ALJ did not err in considering Plaintiff's failure to seek treatment after her headaches allegedly returned in 2012 a clear and convincing reason to discount Plaintiff's credibility.

### 3. Inconsistency with the medical records

Dr. Schreiner's treatment records show that Plaintiff reported on July 1, 2011 that she had been headache-free since her April 1, 2011 visit. Plaintiff also reported on January 3, 2012 that she had been headache-free, except for in November 2011 when she attempted to reduce her medication dosage. At the hearing, however, Plaintiff testified that she had not been headache-free in 2011 or 2012. The Court's previous finding that Dr. Schreiner had noted that Plaintiff's headaches had returned by July 2011 was erroneous. Dr. Schreiner's treatment notes state that Plaintiff reported no headaches in her July 1, 2011 visit. Specifically, Dr. Schreiner reports:

> [Plaintiff] has been doing very well since I last saw her in April. Since increasing the Tegretol at that time to 100 mg 2 tablets t.i.d., she has not had any headaches at all. She denies any side effects from Tegretol except occasionally feeling off balance. She would like to continue the current dose of Tegretol as it is helping her headaches a lot.

AR 284.

Similarly, in January 2012 Dr. Schreiner reports that Plaintiff had wanted to decrease her Tegretol to see if she still needed it. Plaintiff reduced her dose and began having headaches in November 2011. Plaintiff increased her dose and reported to Dr. Schreiner that after increasing her medication she is "doing fine again without any headaches. No Tegretol side effects." AR 281.

Further, the Court's previous reliance on the fact that Plaintiff had two types of headaches does not negate Plaintiff's reports to Dr. Schreiner in July 2011 and January 2012 of being headache-free, because Dr. Schreiner clarified that those reports by Plaintiff and

PAGE 12 – OPINION AND ORDER

Dr. Schreiner's statements regarding Plaintiff being headache-free applied to both types of Plaintiff's headaches. AR 357. Thus, Plaintiff's testimony at the September 2012 hearing was inconsistent with her contemporaneous reports to Dr. Schreiner in 2011 and 2012. As noted above, Plaintiff's report to Dr. Schreiner on September 24, 2012 that Plaintiff's headaches had returned in August 2012 is also inconsistent with her testimony at the hearing. The ALJ did not err in considering the inconsistencies between Plaintiff's testimony and her reports to Dr. Schreiner to be a clear and convincing reason to discount Plaintiff's credibility.

### C. Treating Neurologist Dr. Mia Schreiner

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific,

PAGE 13 – OPINION AND ORDER

legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

On March 23, 2012, Dr. Schreiner opined that Plaintiff would miss two or more days of work per month and confirmed that Plaintiff has been unable to work since June 10, 2009. On September 25, 2012, Dr. Schreiner opined that Plaintiff's headaches would wax and wane, she would still miss two days of work per month despite her periods of improvement, and even low stress jobs would make it more likely that Plaintiff would experience headaches.

The ALJ rejected these opinions by Dr. Schreiner. Instead, the ALJ gave some weight to the opinions of the state agency physicians, who both assessed limitations that would not preclude substantial gainful activity, thus contradicting Dr. Schreiner's opinion. AR 20, 63-72, 75-84. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Schreiner's controverted opinion. *Lester*, 81 F.3d at 830.

The ALJ noted that Dr. Schreiner's opinion was inconsistent with her own progress notes. AR 20. With the corrected timeline of Plaintiff's treatment history before it, the Court now finds that Dr. Schreiner's opinion was inconsistent with her treatment records. When Dr. Schreiner completed the March 2012 medical evaluation form, Plaintiff had reported to Dr. Schreiner that Plaintiff had no headaches since April 2011, except for the period of time when Plaintiff reduced her medication dosage. Those headaches resolved as soon as Plaintiff

PAGE 14 – OPINION AND ORDER

returned her medication dosage to its effective level. Plaintiff had no side effects from the medication. Thus, as of March 2012, Dr. Schreiner's opinion that Plaintiff would miss two or more days per week because of her headaches was inconsistent with Dr. Schreiner's treatment notes detailing Plaintiff's successful treatment with Tegretol that had rendered Plaintiff headache-free for nearly a year, with the exception of the time period when Plaintiff reduced her medication.

Additionally, Dr. Schreiner's report in March 2012 that Plaintiff had been unable to work since June 10, 2009, was inconsistent with Dr. Schreiner releasing Plaintiff to work in October 2009 and with the fact that the only work limitations recommended by Dr. Schreiner after that date were that Plaintiff should not work the register at Big Lots because that job was too stressful and that Plaintiff should not have pressure against the back of her head. This opinion by Dr. Schreiner is also contradicted by the fact that Plaintiff did work after June 10, 2009—she worked from October 2009 until April 2010. These are specific, legitimate reasons to discount Dr. Schreiner's March 2012 opinion.

Much of Dr. Schreiner's March 2012 opinion and all of Dr. Schreiner's September 25, 2012 opinion appear to be based on Plaintiff's self-reports to Dr. Schreiner. For example, Dr. Schreiner's September 25, 2014 is based on Plaintiff's report on September 24, 2012, that Plaintiff's headaches had returned and were strong, daily, and had no apparent cause. Because the ALJ properly discredited Plaintiff's testimony, it was not error for the ALJ to discredit Dr. Schreiner's opinions that were based on Plaintiff's self-reporting. *See Ryan v. Astrue*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (holding that an ALJ may reject portions of a physician's opinion predicated on reports of a claimant properly found not credible).

PAGE 15 – OPINION AND ORDER

The ALJ also rejected Dr. Schreiner's opinion because the ALJ found that when Plaintiff left her job in April, 2010, it was not due to her disability; rather, it was with the intention of taking another, less strenuous, job with fewer hours. The record reveals that Dr. Schreiner recommended that Plaintiff cease working because the strain of her heavy exertion job precipitated her headaches. The record does not show that Dr. Schreiner believed a low stress job would cause Plaintiff to suffer headaches. Until the September 25, 2012 report, Dr. Schreiner did not place any limitation on Plaintiff's ability to work a low stress or sedentary job. Dr. Schreiner only advised Plaintiff against strenuous and stressful jobs and having pressure against the back of Plaintiff's head. Thus, Dr. Schreiner's opinion that Plaintiff cannot work even a low stress job is not supported by Dr. Schreiner's treatment records.

In sum, the ALJ provided sufficient specific, legitimate reasons for rejecting Dr. Schreiner's opinion.

**D.  VE Testimony and DOT**

Plaintiff also argues that the ALJ erred by relying upon testimony of a vocational expert ("VE") that conflicted with the Dictionary of Occupational Titles ("DOT"). Here, the ALJ limited Plaintiff to sedentary work; the VE identified that Plaintiff could perform the occupations of label coder and clerical collator, both light exertion jobs. Where there is an apparent conflict between VE testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p at *2; *see also Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) ("Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*."). The VE testified that her testimony was consistent with the DOT. The ALJ did not

PAGE 16 – OPINION AND ORDER

elicit an explanation for the inconsistency between the RFC limitation to sedentary work and the fact that the label coder and clerical collator jobs were light exertion. This was error.

This error, however, was harmless. The VE also identified the sedentary job of addressing clerk (DOT 209.587-010).[4] Because the ALJ found at step five that Plaintiff could perform the sedentary job of addressing clerk consistent with the RFC, any error in the ALJ's reliance upon the VE's other testimony was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error may be harmless if it has no effect on the ultimate non-disability determination).

## CONCLUSION

The Commissioner's motion for an amended or corrected judgment (Dkt. 20) is GRANTED. The Court amends the Discussion section of its March 9, 2015 Opinion and Order as set forth herein. The Court VACATES its March 9, 2015 Judgment. The Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 13th day of May, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[4] The VE identified the proper DOT code, but mislabeled the position as "records clerk, warehouse." This error is not material, and was not challenged by Plaintiff.